IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 09-cv-02411-MSK-CBS

JONATHAN MATHENY,
    Applicant,
v.

BRIGHAM SLOAN, Warden, and
THE ATTORNEY GENERAL OF THE STATE OF COLORADO,
    Respondents.

---

## RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

---

Magistrate Judge Craig B. Shaffer

This civil action comes before the court on the "Application for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254" ("Petition") (filed October 9, 2009) (doc. # 3). Pursuant to the Order of Reference dated January 26, 2010, this civil action was referred to the Magistrate Judge "to review the merits and to issue proposed findings of fact and recommendations for disposition." (*See* doc. # 14). The court has reviewed the Petition, Respondents' Answer (filed June 18, 2010) (doc. # 27), the pertinent parts of the state court record, the entire case file, and the applicable law, and is sufficiently advised in the premises.

I.    Statement of the Case

On January 3, 2001, Carl and Joanna Dutcher and their fifteen-year-old grandson, Anthony Dutcher, were found murdered. Carl and Joanna Dutcher had been shot inside their home while Anthony Dutcher was found in a lean-to some distance away from the residence with his throat cut. Mr. Matheny and his codefendants all attended the same high school and were members of a purported paramilitary organization know as the Operations and Reconnaissance Agents (OARA).

1

Simon Sue was the founder and leader of OARA and recruited Mr. Matheny and Isaac Grimes into the group. All three Defendants participated in devising a plan to kill the Dutchers and burglarize their home and in disposing of the items used for the murders.

Pursuant to a plea agreement, Mr. Matheny pled guilty in Park County District Court Case No. 01CR24 to three counts of conspiracy to commit murder in the first degree pursuant to Colo. Rev. Stat. § 18-2-201 and § 18-3-102 and one count of violating the Colorado Organized Crime Control Act ("COCCA"), Colo. Rev. Stat. § 18-17-104 and § 18-17-105, all class two felonies. *See People v. Matheny*, (Colo. App. No. 04CA0082) (not published pursuant to C.A.R. 35(f)) (*Matheny I*) (Respondents' Exhibit F to Pre-Answer Response (doc. # 10-6)). On December 1, 2003, the trial court sentenced Mr. Matheny to 24 years in the Colorado Department of Corrections' ("CDOC") on each of the three conspiracy to commit first degree murder counts, to be served concurrently, and 20 years on the COCCA count, to be served consecutively to the conspiracy counts, for an aggregate sentence of 68 years. (*See id.; see also* Exhibit A to Respondents' Pre-Answer Response (doc. # 10 at p. 17 of 21)). Mr. Matheny is currently incarcerated at the Bent County Correctional Facility ("BCCC") of the CDOC in Las Animas, Colorado.

Mr. Matheny appealed his sentence. (*See* doc. # 10-2). On May 19, 2005, a division of the Colorado Court of Appeals dismissed the appeal as to the COCCA sentence, vacated the sentences imposed for the three conspiracy convictions, and remanded for resentencing in light of *Blakely v. Washington*, 542 U.S. 296 (2004) and *Apprendi v. New Jersey*, 530 U.S. 466 (2000). (*See Matheny I* (doc. # 10-6) at p. 4 of 9). On February 10, 2006, Mr. Matheny was resentenced on the three conspiracy convictions to consecutive 24-year terms for the two conspiracy convictions for the murders of Carl Dutcher and Joanne Dutcher and a consecutive 18-year term for the third conspiracy conviction for the murder of Anthony Dutcher, to be served concurrently with the 20-year sentence on the COCCA conviction, for an aggregate sentence of 66 years. (*See* doc. # 10 at p.

19 of 21).

Mr. Matheny again appealed his sentence. (*See* doc. # 10-8). On October 18, 2007, the Colorado Court of Appeals dismissed the appeal in part and affirmed the consecutive sentences imposed for the conspiracy convictions. (*See People v. Matheny* (Colo. App. No. 06CA0614) (not published pursuant to C.A.R. 35(f)) (*Matheny II*) (Respondents' Exhibit J to Pre-Answer Response) (doc. # 10-10) at p. 3 of 7).

> Defendant acknowledges that his aggregate sixty-six year sentence is within the range allowed under the plea agreement, but claims his appeal is permissible under *People v. Misenhelter*, 121 P.3d 230 (Colo. App. 2004), because it challenges the propriety of the sentencing proceedings, not the propriety of the sentence itself.
>
> We disagree because, although couched in constitutional terms, defendant's arguments are nothing more than a claim that the evidence did not support the district court's sentencing determination, and that the court abused its discretion by concluding that he was more culpable than his codefendants. Accordingly, his claims are barred by section 18-1-409(1). *See People v. Lassek*, 122 P.3d 1029, 1031-34 (Colo. App. 2005); *People v. Garcia*, 55 P.3d 243, 244 (Colo. App. 2002); *People v. Prophet*, 42 P.3d 61, 62 (Colo. App. 2001).

(*See* doc. # 10-10 at pp. 5-6 of 7). Mr. Matheny's petition for writ of certiorari was denied by the Colorado Supreme Court on April 7, 2008. (*See* Respondents' Exhibits K, L to Pre-Answer Response (docs. # 10-11, # 10-12)). The mandate issued on April 18, 2008. (*See* Respondents' Exhibit M to Pre-Answer Response (doc. # 10-13)).

On August 7, 2008, Mr. Matheny filed a motion for sentence reconsideration in the trial court pursuant to Crim. P. 35(b). (*See* doc. # 10 at p. 20 of 21; *see also* trial court file Vol. IV). The trial court denied the motion on October 31, 2008. (*See id.*).

Mr. Matheny filed this Petition in federal court on or about October 9, 2009, alleging four claims. (*See* Petition (doc. # 3)). Based upon Respondents' arguments and Mr. Matheny's concession, on January 13, 2010 the court dismissed Claim 1(b) as procedurally barred and Claim 4 because the alleged violation of state law did not state a cognizable federal constitutional claim.

3

(*See* Order to Dismiss in Part and to Draw Case to a District Judge and to A Magistrate Judge" (doc. # 12)). Thus, the court proceeds to review Claims 1(a), 2, and 3 of the Petition. Mr. Matheny alleges: (1) the trial court relied on charges dismissed as part of the plea agreement in imposing sentence in violation of his right to due process; (2) his right to Equal Protection was violated because his sentence is longer than the sentences his codefendants received; (3) his sentence violates the Eighth Amendment because the trial court refused to consider his potential for rehabilitation. (*See* Petition (doc. # 3) at pp. 26-39 of 39; *see also* doc. # 12 at p. 3 of 6).

II.     One-Year Limitation Period for Filing Application for Federal Habeas Relief

Respondents do not challenge the timeliness of the Petition under the one-year limitation period set forth in 28 U.S.C. § 2244(d)(1). (*See* doc. # 27 at p. 7 of 26).

III.    Procedural Default

Respondents argue that because Mr. Matheny's claims were all rejected by the Colorado Court of Appeals on an independent and adequate state procedural law ground, his claims are procedurally defaulted, precluding federal habeas review. *See Coleman v. Thompson*, 501 U.S. 722, 749-50 (1991) ("In all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice."). A state procedural ground is independent if it relies on state law, rather than federal law, as the basis for the decision. *English v. Cody*, 146 F.3d 1257, 1259 (10th Cir. 1998). To be adequate, "a state's procedural rule used to bar consideration of a claim must have been firmly established and regularly followed by the time as of which it is to be

applied." *Walker v. Attorney General for the State of Oklahoma*, 167 F.3d 1339, 1344 (10th Cir. 1999) (citations and internal quotation marks omitted). *See also Hickman v. Spears*, 160 F.3d 1269, 1270 (10th Cir. 1998) (state ground is adequate if the state strictly or regularly follows it and applies the rule evenhandedly to all similar claims).

The Colorado Court of Appeals rejected Mr. Matheny's claims that "the resentencing court violated his constitutional rights by considering the charges that were dismissed pursuant to the plea agreement; imposing a lengthier sentence that his codefendants received; and concluding that the mitigating factor of his rehabilitative potential was outweighed by other factors, including the effect of the crime on the victims' family" as barred by Colo. Rev. Stat. § 18-1-409(1). (*See* doc. # 10-10 at pp. 4-5 of 7). Section 18-1-409(1) "provides for appellate review of the propriety of a sentence except in cases where the sentence imposed is within a range agreed upon by the parties pursuant to a plea agreement." *People v. Garcia*, 55 P.3d 243, 244 (Colo. App. 2002) (internal quotation marks omitted). *See also People v. Lassek*, 122 P.3d 1029, 1033 (Colo. App. 2005) (Section 18-1-409(1) "precludes nonconstitutional challenges to a sentencing proceeding by a defendant whose sentence did not exceed the agreed cap."). Mr. Matheny's aggregate 66-year sentence was within the range agreed upon by the parties. (*See* Plea Agreement (doc. # 3 at pp. 11-16 of 39) (stipulating the total sentence to be not less than forty-eight years nor more than eighty years); *see also* State Court Record, Reporter's Transcript Vol. 11 of February 10, 2006 Resentencing Hearing at p. 5 of 42). "[A]lthough couched in constitutional terms," Mr. Matheny's claims were determined to be nonconstitutional challenges to his sentence. (*See* doc. # 10-10 at pp. 4-5 of 7). Section 18-1-409(1) is a state statute independent of federal law and its application does not require a resolution of the claim's merits. Section 18-1-409(1) is also adequate, as illustrated by a long line of cases that has applied the bar against such sentencing claims. *See People v. Lassek*, 122 P.3d at 1031-34; *People v. Garcia*, 55 P.3d at 244; *People v. Prophet*, 42

P.3d 61, 62 (Colo. App. 2001). Mr. Matheny's claims are procedurally defaulted as they were rejected by the Colorado Court of Appeals based on an independent and adequate state procedural ground.

The court must next determine whether an exception applies which would overcome the procedural bar and allow Mr. Matheny's defaulted claim to be reviewed by this court. Claims which have been procedurally defaulted must be dismissed with prejudice unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or alternatively, that failure to consider the claims will result in a fundamental miscarriage of justice. *Coleman*, 501 U.S. at 749-50. "The determination of cause and prejudice and of fundamental miscarriage of justice are both matters of federal law." *Demarest v. Price*, 130 F.3d 922, 941 (10th Cir. 1997).

In order to meet the "cause" element of the cause and prejudice standard, a petitioner must demonstrate that his failure to properly raise his federal constitutional claims in state court was the result of some objective factor external to the defense. *Klein v. Neal*, 45 F.3d 1395, 1400 (10th Cir. 1995). "As for prejudice, a petitioner must show actual prejudice resulting from the errors of which he complains." *Johnson v. Champion*, 288 F.3d 1215, 1227 (10th Cir. 2002) (internal quotation marks and citation omitted). "More specifically, a petitioner must demonstrate actual prejudice resulting from the alleged constitutional violation." *Johnson*, 288 F.3d at 1227 (internal quotation marks and citation omitted). "As an alternative to showing cause and prejudice, a procedurally defaulted petitioner can obtain federal review of his claims if he or she can demonstrate that failure to consider them will result in a fundamental miscarriage of justice." *Parkhurst v. Shillinger*, 128 F.3d 1366, 1372 (10th Cir. 1997) (citation omitted). The fundamental miscarriage of justice exception is an "extremely narrow exception, implicated only in 'an extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent.' "

*Phillips v. Ferguson*, 182 F.3d 769, 774 (10th Cir. 1999) (quoting *Ballinger v. Kerby*, 3 F.3d 1371, 1375 (10th Cir.1993) (quoting *Murray*, 477 U.S. at 496)).

Mr. Matheny has not asserted any cause or prejudice for his procedurally defaulted claims. Nor has he alleged or demonstrated that the application of a procedural bar against his defaulted claims will result in a fundamental miscarriage of justice. The court concludes that Mr. Matheny has not demonstrated "cause and prejudice" or a fundamental miscarriage of justice sufficient to excuse the procedural default. Mr. Matheny's claims are thus barred from federal review and properly dismissed with prejudice. *See Coleman*, 501 U.S. at 749-50.

IV.    Merits of Mr. Matheny's Claims

Even if Mr. Matheny's claims were not procedurally defaulted, they would fail on the merits.

A.    Standard of Review

Mr. Matheny filed this habeas proceeding after the April 24, 1996 effective date of the Antiterrorism and Effective Death Penalty Act ("AEDPA"). Consequently, federal review of the Petition is governed by the standards set out in 28 U.S.C. § 2254(d), as amended by the AEDPA. *See Price v. Vincent*, 538 U.S. 634, 638 (2003) ("A habeas petitioner whose claim was adjudicated on the merits in state court is not entitled to relief in federal court unless he meets the requirements of 28 U.S.C. § 2254(d)"). Section 2254(d) provides that a writ of habeas corpus may not be issued with respect to any claim that was adjudicated on the merits in state court unless the state court adjudication:

>  (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

>  (2) resulted in a decision that was based on an unreasonable determination of the

7

facts in light of the evidence presented in the State court proceeding.

28 U.S.C. 2254(d). The Supreme Court has construed the language of § 2254(d)(1):

> . . . a decision by a state court is "contrary to" our clearly established law if it "applies a rule that contradicts the governing law set forth in our cases, or if it "confronts a set of facts that are materially indistinguishable from a decision of this Court and nevertheless arrives at a result different from our precedent. . . ."

*Price*, 538 U.S. at 640. In determining whether the state court decision "involved an unreasonable application of clearly established Federal law" under § 2254(d)(1),

> a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the state-court decision applied [a Supreme Court case] incorrectly. Rather, it is the habeas applicant's burden to show that the state court applied [that case] to the facts of his case in an objectively unreasonable manner."

*Price*, 538 U.S. at 640-41 (internal quotation marks and citations omitted).

The Supreme Court has interpreted § 2254(d)(2) to mean that "a decision adjudicated on the merits in a state court and based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding." *Miller-El v. Cockerell*, 537 U.S. 322, 340 (2003). *See also Foster v. Johnson*, 293 F.3d 766, 776-77 (5th Cir. 2002) ("To establish that habeas relief is warranted on the § 2254(d)(2) ground . . . a petitioner must rebut by clear and convincing evidence the § 2254(e)(1) presumption that a state court's factual findings are correct.") (citations omitted). When applying § 2254(d)(2), "the factual issues decided by the [state] court are presumed to be correct and [Mr. Matheny] bears the burden of rebutting this presumption by clear and convincing evidence." *Le v. Mullin*, 311 F.3d 1002, 1010 (10th Cir. 2002) (citing 28 U.S.C. § 2254(e)(1)).

B.  Analysis

1.  Claim Alleging Violation of Due Process

Mr. Matheny claims that the trial court relied on charges dismissed as part of the plea

8

agreement in imposing sentence in violation of his right to due process. (*See* Petition (doc. # 3) at pp. 26-32 of 39; *see also* doc. # 12 at p. 3 of 6).

First, Mr. Matheny has not demonstrated and the record does not reflect that in determining the sentence, the trial court considered the charges that were dismissed as part of the plea agreement. The presumptive range of penalties for the three conspiracy convictions to which Mr. Matheny pled guilty was eight to twenty four years on each count. (*See* Colo. Rev. Stat. § 18–1.3-401(1)(a)(V)(A); *see also* State Court Record, Reporter's Transcript Vol. 11 of February 10, 2006 Resentencing Hearing at p. 4 of 42). The sentence Mr. Matheny received was within the presumptive range for each count to which he pled guilty.

Fed. R. Crim. P. 11(e)(1)(C) allows the parties to avoid any uncertainty by agreeing to a specific sentence or sentencing range. If the court accepts such an agreement, it cannot impose a sentence beyond this range. *See United States v. Kemper*, 908 F.2d 33, 35-36 (6th Cir. 1990). In the plea agreement, Mr. Matheny stipulated to a total sentence of not less than forty-eight years plus five years of parole and not more than eighty years plus five years of parole. (*See* doc. # 3 at p. 12 of 39). The total sentence Mr. Matheny received was within this range. Nothing in the plea agreement suggests that the court was precluded from considering the conduct that was the basis of Mr. Matheny's guilty plea to three counts of conspiracy to commit murder in the first degree. The record reflects that Mr. Matheny was sentenced for the gravity of the counts to which he pled guilty, not for the dismissed counts.

Even if the court had considered the dismissed charges, there would be no violation of federal law. The United States Sentencing Guidelines constitute an advisory guideline system for sentencing in federal courts. *See Gall v. United States*, 552 U.S. 38, 49 (2007) ("a district court should begin all sentencing proceedings by correctly calculating the applicable Guidelines range.") (citation omitted). There are multiple phases of the sentencing calculation in which a district court

9

may consider uncharged or dismissed conduct. *See* U.S.S.G. § 1B1.4 (departure from guideline range allowed based on conduct which was the subject of dismissed counts); U.S.S. G. § 1B1.3 ("Relevant Conduct (Factors that Determine the Guideline Range)"); U.S.S.G. § 6B1.2(a) (policy statement) ("[A] plea agreement that includes the dismissal of a charge . . . shall not preclude the conduct underlying such charge from being considered under the provisions of § 1B1.3 (Relevant Conduct). . ."); *United States v. Cross*, 121 F.3d 234, 243 (6th Cir. 1997) ("In short, we hold that under § 1B1.4 and its commentary, a district court may depart upwards based on conduct that is covered by a dismissed count.") (citations omitted); *United States v. Harris*, 70 F.3d 1001, 1003 (8th Cir. 1995) (it is well settled that conduct in dismissed counts can be used in calculating the base offense level and adjustments); *United States v. Zamarripa*, 905 F.2d 337, 341 (10th Cir. 1990) ("misconduct not resulting in conviction may be factored into the district court's sentencing decision"); *United States v. Kim*, 896 F.2d 678, 685 (2d Cir. 1990) (allowing upward departure for misconduct involved in three dismissed counts); *United States v. Ashburn*, 38 F.3d 803, 808 (5th Cir. 1994) (allowing use of dismissed counts in departing from criminal history calculation). As his sentence was not contrary to federal law or an unreasonable determination of the facts, Mr. Matheny is not entitled to habeas relief on this claim.

2.   Claim Alleging Equal Protection Violation

Mr. Matheny claims that the trial court violated his right to Equal Protection because his sentence is longer than the sentences his codefendants received. (*See* Petition (doc. # 3) at pp. 33-35 of 39; *see also* doc. # 12 at p. 3 of 6). In the state courts and in the Petition, Mr. Matheny compared his sentence only to the sentence of codefendant Simon Sue. Mr. Sue pled guilty to three counts of conspiracy to commit first degree murder and one COCCA count and received an

aggregate 53-year sentence.[1]

Federal courts must "afford wide discretion to the state trial court's sentencing decision." *Dennis v. Poppel*, 222 F.3d 1245, 1258 (10th Cir. 2000). Challenges to the state trial court's exercise of its sentencing discretion are generally not constitutionally cognizable, unless the petitioner can show that the sentence imposed is outside the statutory limits or unauthorized by law. *Id*. Under federal law, a criminal defendant alleging a disparity between his sentence and the sentence of a co-defendant is not entitled to relief from a sentence that is properly within the sentencing guidelines and statutory requirements. *See, e.g., United States v. Blackwell*, 127 F.3d 947, 951-52 (10th Cir. 1997) (stating that the guidelines are intended to equalize sentences on a national level and that disparities among individual co-defendants are not grounds for a downward departure). This has been held to be the case both where the defendant alleges an Eighth Amendment violation due to the disparity, *United States v. Youngpeter*, 986 F.2d 349, 355-56 (10th Cir. 1993), and where the defendant alleges a due process or equal protection violation based upon the disparity, *United States v. Trujillo*, 906 F.2d 1456, 1465 (10th Cir. 1990). In *Blackwell*, the Tenth Circuit noted that this holding is in accord with cases in every other federal appellate circuit. *See* 127 F.3d at 951-52 (citing collected cases from other circuits holding that "disparity between sentences of co-defendants . . . is not a proper basis for sentence reduction beyond the guidelines minimum"). The convictions for which Mr. Matheny was sentenced authorize the length of the sentence he received. The sentence Mr. Matheny received was within the statutory presumptive range for the counts to which he pled guilty.

Further, sentencing is individualized under federal law and there is no requirement that codefendants receive similar sentences. *See United States v. Davis*, 437 F.3d 989, 997 (10th Cir. 2006) ("disparate sentences are allowed where the disparity is explicable by the facts on the

---

[1] The third defendant, Isaac Grimes, received a 60-year sentence.

record") (internal quotation marks omitted).  A disparity between a defendant's sentence and that of his codefendants does not violate the equal protection clause where it is explainable because of different circumstances.  *U.S. v. Horn*, 946 F.2d 738, 746 (10th Cir. 1991).  The Tenth Circuit has routinely upheld disparities in sentencing that can be explained based on the circumstances of the case.  *United States v. Sardin*, 921 F.2d 1064, 1067-68 (10th Cir. 1990) (citations omitted).

The disparity in sentencing between Mr. Matheny and Mr. Sue is approximately 20%.  The disparity in sentencing between Mr. Matheny and Mr. Grimes is approximately 10%.  The trial court determined that Mr. Matheny was "more culpable in two actual murders than the two other co-defendants."  (*See* State Court Record, Reporter's Transcript Vol. 11 of February 10, 2006 Resentencing Hearing at p. 38 of 42).  Mr. Sue was out of the country when the murders occurred.  Thus, the trial court concluded that Mr. Sue "is, as far as being the trigger man, not the one culpable."  (*See id.*).  The trial court determined that Mr. Grimes "is more culpable in one of the murders; in fact, he admitted it. . . So it seems to me that you are more culpable than Mr. Grimes."  (*See id.*).

Evidence presented at the preliminary hearing showed that Mr. Matheny was responsible for designing the plan to kill the Dutchers and that it was his plan that was carried out on the night of the murders.  Mr. Matheny obtained the murder weapon in a previous burglary. Mr. Matheny drove himself and Mr. Grimes to the Dutchers' residence on the night of the murders.  Mr. Matheny shot Carl Dutcher in the hallway of his home with an assault rifle.  Mr. Matheny shot Joanna Dutcher after she tried to hide in the bathroom.  Mr. Matheny took extensive measures to dispose of and hide evidence of the murders.  Mr. Matheny provided financial support for the plan to kill the Dutchers.  (*See* State Court Record, People's Exhibit 2, Reporter's Transcript of July 23, 2001 Preliminary Hearing at pp. 12, 14, 18-19, 21, 26, 40-42, 51-54, 59-61, 63-68, 72, 87-88, 100-03 of 123).  In contrast, Mr. Sue was in Canada when the murders occurred, was cooperative with the

police, and agreed to testify at trial. The record demonstrates substantial differences between the codefendants and their respective culpability and involvement in the crimes. As his sentence is fully supported by the circumstances of the case and not in violation of his equal protection rights, Mr. Matheny is not entitled to habeas relief on this claim.

3.     Claim Alleging Violation of Eighth Amendment

Mr. Matheny argues that his sentence violates the Eighth Amendment because the trial court did not adequately consider the mitigating factor of his potential for rehabilitation based on his youth. (*See* Petition (doc. # 3) at p. 35-36 of 39).

The Eighth Amendment provides that "[e]xcessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." U.S. Const. Amend. VIII. The Eighth Amendment's prohibition against imposition of cruel and unusual punishment requires that the sentence cannot be disproportionate to the severity of the crime or involve unnecessary infliction of pain. *Solem v. Helm*, 463 U.S. 277 (1983). *See also United States v. Johnson*, 451 F.3d 1239, 1242 (11th Cir. 2006) (Eighth Amendment "contains a narrow proportionality principle that applies to noncapital sentences") (internal quotation marks and citation omitted). In *Solem*, "the Supreme Court articulated a three-part test for analyzing proportionality claims under the Eighth Amendment. It instructed courts to use objective criteria to evaluate: (i) the gravity of the offense and the harshness of the penalty; (ii) the sentences imposed on other criminals in the same jurisdiction; and (iii) the sentences imposed for commission of the same crime in other jurisdictions." *Hawkins v. Hargett*, 200 F.3d 1279, 1281 (10th Cir. 1999) (internal quotation marks omitted).

"The Court revisited the proportionality issue" in *Harmelin v. Michigan*, 501 U.S. 957 (1991). *Hawkins*, 200 F.3d at 1281. The Eighth Amendment "does not require strict proportionality between crime and sentence" but "forbids only extreme sentences that are grossly disproportionate' to the

crime." *Harmelin*, 501 U.S. at 1001 (Kennedy, J., concurring in part and concurring in judgment) (internal quotation marks and citation omitted). *Harmelin* "narrows *Solem* and sets forth the applicable Eighth Amendment proportionality test." *Hawkins*, 200 F.3d at 1282. Thus, the court examines Mr. Matheny's sentence in relation to his crimes for "gross disproportionality." *Id*. The burden is on the defendant to make a threshold showing that his sentence is "grossly disproportionate to the offense committed." *Johnson*, 451 F.3d at 1243 (internal quotation marks and citation omitted). If the court does not find gross disproportionality, "there is no need to proceed to the comparative analyses." *Hawkins*, 200 F.3d at 1282.

"*Solem* instructed courts to compare the gravity of an offense with the severity of the sentence by looking at the harm caused or threatened to the victim or society, and the culpability of the offender." *Hawkins*, 200 F.3d at 1283 (internal quotation marks and citation omitted). "The first prong of the *Solem* test allows courts to consider multiple factors relevant to culpability, an option that *Harmelin* does not foreclose." *Hawkins*, 200 F.3d at 1284. "The chronological age of a defendant is a factor that can be considered in determining whether a punishment is grossly disproportionate to the crime inasmuch as it relates to his culpability." *Hawkins*, 200 F.3d at 1283.

The sentencing court thoroughly considered Mr. Matheny's youth and rehabilitative potential in imposing sentence.

> Mr. Matheny, I'm not going to repeat many of the remarks that I made at your prior sentencing hearing back in 2003, I believe, nor am I going to repeat some of the similar comments I made on Monday when I sentenced Mr. Grimes.
> I've talked many times about the horrific nature of these crimes, . . . and we all know the resultant tragedy when young men, boys, commit such crimes.
> I think that the most powerful argument that [defense counsel] made for leniency in sentencing is what we all know about young men, boys, adolescents, and their inability to see consequences, and how that changes and how a young man of 17 is not the same as a fully mature man at 39, or even 25.
> That's really true. None of us have the judgment we have later on in life. The brain does operate differently when we're adolescents. I agree with all of that, and I feel that that is somewhat mitigating. I also feel that those mitigating circumstances were previously reflected, both in the plea agreement and in my sentencing order, which was considerably – originally considerably less than the maximum that could

> have been imposed.
>
> The problem I have with this is, you know, you argue correctly through your attorney that you're not the same person when you're 17 and you don't have the same ability to judge and to resist and so forth.
>
> But what does a judge tell the victims? What do I say to Tony Dutcher's father that lost both a son and two parents all on the same night? How much does that affect him? Do you expect a victim of a crime, crimes, such as yours, to say, "Oh, I understand. He was young, he wasn't exercising good judgment.
>
> So there needs to be some sort of balance. In other words, sure, I do have to consider the fact that you had no previous conviction or adjudication. I do have to consider the fact that your judgment is not the same as it was – as it would be if you were an adult.
>
> But I also have to consider the fact – I also have to consider the consequences of your actions. I mean, it's not the theft of a loaf of bread. It's not even the effect of a bruise from an assault. It's not even, you know, a robbery. It's the terrible death of three people, and I saw the pictures of those victims.
>
> And frankly, it's been a long time since I've seen them, but they are still burnt into my memory, as I said earlier.
>
> And if I could speak to those victims, what would I tell them? Well, what would you say to them? You can't just say, "Well, I had poor judgment, I didn't have the ability to have the judgment of an adult."
>
> You were 17, not 6. You were a bright young man, you probably still are, you're very articulate. What can I tell them? I can't tell them that you deserve to be released after a short time.
>
> On the other hand, you know, you don't deserve, because you may change, and I said this to Mr. Grimes. What bothers me and what adds to the tragedy of this case is that you may change. You may have changed already. Who knows what you will be in 10 years. You could be a good person that is not deserving to wait until another 31 years to be parole-eligible.
> . . .
> So, while I think that argument is quite effective and I'll give its due, there's the other side.

(*See* State Court Record, Reporter's Transcript Vol. 11 of February 10, 2006 Resentencing Hearing at pp. 34-38 of 42).

The record does not support Mr. Matheny's claim that his sentence is grossly disproportionate to his crimes. The sentencing court considered that Mr. Matheny's culpability may have been diminished somewhat due to his age at the time of the crimes. However, this was not a case of an unintended homicide resulting from reckless youthful behavior. Mr. Matheny's criminal conduct was violent, intentionally directed at specific persons, and premeditated. After considering Mr. Matheny's age, the court concluded that the length of the sentence was more than outweighed

15

by the severity of the crimes and the terrible harm caused to the victims, their family, and society.

Further, the sentence imposed was within statutory limits. "In general, a sentence within the limits imposed by statute is neither excessive not cruel and unusual under the Eighth Amendment." *United States v. Delacruz-Soto*, 414 F.3d 1158, 1168 (10th Cir. 2005) (citation omitted). *See also Horton v Ercole*, 557 F. Supp. 2d 308, 325-26 (N.D.N.Y. 2008) ("It is well-established that a sentence of imprisonment that is within the limits of a valid state statute is not cruel and unusual punishment in the constitutional sense.") (citation omitted). Mr. Matheny is not entitled to habeas relief on this claim because his sentence was within the statutory limits and because he fails to meet his burden of making a threshold showing that his sentence was grossly disproportionate to his offense.

As Mr. Matheny has not stated a claim upon which federal habeas relief may be granted, IT IS RECOMMENDED that the "Application for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254" ("Petition") (filed October 9, 2009) (doc. # 3) be DENIED and this civil action be DISMISSED with prejudice.

**Advisement to the Parties**

Within fourteen days after service of a copy of the Recommendation, any party may serve and file written objections to the Magistrate Judge's proposed findings and recommendations with the Clerk of the United States District Court for the District of Colorado. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *In re Griego*, 64 F.3d 580, 583 (10th Cir. 1995). A general objection that does not put the District Court on notice of the basis for the objection will not preserve the objection for *de novo* review. "[A] party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for de novo review by the district court or for appellate review." *United States v. One Parcel of Real Property Known As 2121 East 30th Street, Tulsa,*

*Oklahoma*, 73 F.3d 1057, 1060 (10th Cir. 1996). Failure to make timely objections may bar *de novo* review by the District Judge of the Magistrate Judge's proposed findings and recommendations and will result in a waiver of the right to appeal from a judgment of the district court based on the proposed findings and recommendations of the magistrate judge. *See Vega v. Suthers*, 195 F.3d 573, 579-80 (10th Cir. 1999) (District Court's decision to review a Magistrate Judge's recommendation *de novo* despite the lack of an objection does not preclude application of the "firm waiver rule"); *International Surplus Lines Insurance Co. v. Wyoming Coal Refining Systems, Inc.*, 52 F.3d 901, 904 (10th Cir. 1995) (by failing to object to certain portions of the Magistrate Judge's order, cross-claimant had waived its right to appeal those portions of the ruling); *Ayala v. United States*, 980 F.2d 1342, 1352 (10th Cir. 1992) (by their failure to file objections, plaintiffs waived their right to appeal the Magistrate Judge's ruling). *But see, Morales-Fernandez v. INS*, 418 F.3d 1116, 1122 (10th Cir. 2005) (firm waiver rule does not apply when the interests of justice require review).

Dated at Denver, Colorado this 23rd day of July, 2010.

BY THE COURT:

    s/Craig B. Shaffer
United States Magistrate Judge